# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY D. LEISER,**

    **Plaintiff,**

    v.                                                                                        **Case No. 19-CV-677**

**DAVID TARR and**
**LARRY FUCHS,**

    **Defendants.**

## DECISION AND ORDER

Plaintiff Jeffrey D. Leiser, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. This court screened his complaint and allowed him to proceed on a First Amendment retaliation claim against defendants David Tarr and Larry Fuchs. (ECF No. 8.) Defendants move for summary judgment on exhaustion grounds. (ECF No. 14.) After the court provided Leiser additional time to respond to the defendants' motion, he filed a brief in opposition. (ECF No. 22.) The court also permitted Leiser to file a surreply (ECF No. 31), to which the defendants have responded (ECF No. 32). The motion is now fully briefed and ready for resolution.

## BACKGROUND

The facts in this section are taken from Leiser's complaint (ECF No. 1); the defendants' proposed findings of fact (ECF No. 16) and their declarations in support

(ECF Nos. 17 & 27); Leiser's proposed findings of fact (ECF No. 23), his declaration in support (ECF No. 24), and his response in opposition to the defendants' proposed facts (ECF No. 25); and the defendants' response to Leiser's proposed facts (ECF No. 28).

Leiser is an inmate at Redgranite Correctional Institution ("RGCI") and a former inmate of New Lisbon Correctional Institution ("NLCI"). (ECF No. 16, ¶ 1.) He alleges the defendants retaliated against him for filing inmate complaints and a previous lawsuit against NLCI officials by transferring him from NLCI to RGCI on August 30, 2018. (*Id.*; *see* ECF No. 8 at 5, 10.) Fuchs is the security director at NLCI, and Tarr is the security director at RGCI. (ECF No. 1, ¶¶ 12, 16; ECF No. 27-1 at 6.)

Defendants contend that Leiser did not file an inmate complaint about the alleged retaliatory transfer. (ECF No. 16, ¶ 2.) They submitted a printout of Leiser's inmate complaint history report, which they assert shows no inmate complaint related to Leiser's transfer from NLCI to RGCI or alleging retaliation. (ECF No. 17-1 at 4; ECF No. 17, ¶¶ 8–9.)

Defendants also provided a copy of the Inmate Classification Report from Leiser's reclassification hearing, which was held on August 23, 2018. (ECF No. 27-1.) Before the hearing, a social worker interviewed Leiser, who "request[ed] medium custody and institution placement at RGCI." (*Id.* at 4.) The social worker noted Leiser's "amenability to transfer" and that there was "an approved security trade between RGCI and NLCI," and recommended Leiser be placed at RGCI. (*Id.*) At the reclassification hearing, Leiser reiterated that he "is agreeable to transfer to RGCI."

2

(*Id.* at 5.) The committee deciding Leiser's reclassification recommended "medium custody with transfer to RGCI." (*Id.* at 6.) The committee also noted, like the social worker, that there was an "[a]greement between security directors for Inmate Leiser's housing at RGCI." (*Id.* at 7.) The report notes that Leiser "may request an Administrative Review of the Classification decision pursuant to DOC 302.19 by filing a current DOC-1292 (Rev. 7/2018) form . . . within 10 days of receipt of the final decision." (*Id.* at 6.) (Leiser attached to his surreply only page 6 of the report, which contains the language about administrative review. (*See* ECF No. 31-1 at 1.))

Leiser contends that he exhausted his remedies by filing an inmate complaint at RGCI on September 4, 2018. (ECF No. 23, ¶¶ 2–3.) He asserts that the complaint provided "sufficient notice that he is being retaliated against when they moved Leiser from NLCI to RGCI." (*Id.*, ¶ 6.) Leiser attached to his summary judgment materials the September 4, 2018 complaint. (ECF No. 24-1 at 2.) The complaint lists the "Location of Incident" as the "RGCI Property Room" and lists the "Date of Incident" as "8/30/18 on-going." (*Id.*) As the summary of the complaint, Leiser wrote, "Property Staff are violating DOC 309.20(f) refusing to give Leiser his legal materials and other property." (*Id.*) The complaint also contains the following allegations:

> RGCI property staff's illegal action/retaliation is violating my rights to access the court on my court deadlines as well as the inmates whom[] I am helping. I will be contacting the Federal Court to inform the[m] of the const[a]nt retaliation of moving me, keeping my legal materials, for interfering with my court deadlines.

(*Id.*; *see* ECF No. 23, ¶ 3.) Leiser requests "all my legal property and personal property to be given to me at once." (ECF No. 24-1 at 2.)

3

Leiser also attached a follow-up letter that he sent to the RGCI warden on September 20, 2018. (ECF No. 24-1 at 3.) In the letter he wrote the following:

> Apparantly [sic], RGCI staff believe they are above the law and rules setout by the courts. Clearly, your staff's refusal to return all my legal materials violate DOC rules, as well as retaliatory against Leiser for being a Jailhouse L[itiga]tor, and has been successful[] against ex C/O Kloth, (Leiser v. Kloth) (Leiser v. Hannula) and will be against the other 2 pending cases, which one is retaliatory against SCI staff!

(*Id.* at 4.) He insists that his property be returned to him and states, "This is retaliation for the 4 current civil suit[s] Leiser has pending against DOC staff at SCI, & NLCI." (*Id.*) He asks that the warden "stop your staffs retaliatory actions and order your staff to give[] Leiser all the legal materials I came to RGCI with on 8/30/18 from NLCI." (*Id.*) His letter says nothing about the transfer itself being the retaliatory act.

Finally, Leiser attached a follow-up complaint, signed September 11, 2018, in which he again alleged that the property staff at RGCI are "refusing to give Leiser his Legal Property that he came here with . . . violating DOC 309.20." (*Id.* at 6.) This complaint, like his letter, says nothing about his transfer.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

4

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**ANALYSIS**

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). "Substantial compliance with administrative remedies" does not satisfy the PLRA. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Nor is

5

there a "futility exception" to exhaustion under the PLRA. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (citing *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989)); *see Booth*, 532 U.S. at 741. Nonetheless, a prisoner is not required to exhaust his administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Leiser failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System ("ICRS") to allow inmates to file complaints about the rules, living conditions, and staff actions at their institutions. Although an inmate "need not lay out the facts, articulate legal theories, or demand particular relief," the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Wisconsin law states that each inmate complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code § DOC 310.07(5)-(6). Specific to an allegation of retaliation, the inmate "must at least identify two things: the retaliatory act and the alleged protected activity." *Hollis v. Rymarkiewicz*, No. 17-C-1454, 2018 WL 5795462, at *3 (E.D. Wis. Nov. 5, 2018). Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. Wis. Admin. Code § DOC 310.05.

The parties do not dispute that Leiser filed an inmate complaint on September 4, 2018. Nor do they dispute that Leiser had a reclassification hearing before his August 30, 2018 transfer and that he was made aware of his ability to request an administrative review of the classification decision. The questions here are whether the inmate complaint he filed adequately alerted RGCI that Leiser claimed the transfer was in retaliation for his earlier complaints and lawsuit against NLCI staff and whether the review of the classification decision was an "available" administrative remedy. These are questions of law. Therefore, a hearing as described in *Pavey*, 544 F.3d at 742, is unnecessary to resolve any questions of fact as to whether Leiser exhausted his administrative remedies.

The defendants assert that Leiser's September 4, 2018 inmate complaint did not address the issue he raises in this case. (ECF No. 26 at 2.) They contend that he complained only that RGCI officials retaliated against him by withholding his legal materials after he was transferred to that institution, not that the officials at NLCI and RGCI retaliated against him by transferring him to RGCI. (*Id.*) That complaint, the defendants conclude, did not put either prison on notice of the alleged retaliatory transfer. (*Id.*)

The defendants are correct. The summary included in the September 4, 2018 complaint accuses property staff only of refusing to give him legal materials, and the detailed description focused on the denial of his right to access the court. Leiser's only requested relief was return of his legal and personal property. His allegation that his property is being withheld fits into that legal claim and request for relief. Moreover,

7

Leiser directed his accusations at the "RGCI property staff." Neither Fuchs nor Tarr is a member of the property staff; they are security directors. Leiser knows their titles because he provided them in his § 1983 complaint. (ECF No. 1, ¶¶ 12, 16.) Fuchs does not even work at RGCI. Nothing in Leiser's inmate complaint suggests a claim of retaliatory transfer against either defendant.

The only comment that comes close to mentioning a retaliatory transfer is Leiser's statement that he would inform the federal court "of the const[a]nt retaliation of moving me, keeping my legal materials, for interfering with my court deadlines." (ECF No. 22 at 3.) This lone mention in a string of claims does not "clearly identif[y]" a claim of a retaliatory transfer, nor does it "contain sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code § DOC 310.07(5)-(6). Leiser does not adequately identify the retaliatory act. He suggests only that unnamed staff at some point have been "moving me." "Moving" an inmate is not necessarily the same as transferring him, and Leiser does not clarify that the "move" of which he complains is his transfer to RGCI. Nor does he identify his protected activity that led to the alleged "retaliation of moving me." He does not allege that he filed past complaints and a lawsuit that prompted the alleged retaliation. This single remark is insufficient to allege a claim of retaliation under Wisconsin's ICRS. *See Hollis*, 2018 WL 5795462, at *3.

Nor did the inmate-complaint examiner read Leiser's complaint as alleging retaliatory transfer. The receipt of the complaint contains a "brief summary" that reads, "Inmate complains that he is being denied his legal materials." (ECF No. 24

at 1.) There is no mention of a retaliatory transfer. Leiser's complaint alleged an issue with his legal materials being withheld, but it failed to provide sufficient information to alert RGCI that he believed he was transferred in retaliation for his earlier complaints and lawsuit against NLCI officials.

Leiser alternatively asserts that he cannot use ICRS to challenge a classification decision. (ECF No. 22 at 1.) He contends that "[b]ecause the move was done by Bureau of Movement and Classifications," there is no administrative remedy available to him that he must exhaust before bringing a legal claim based on a retaliatory transfer. (*Id.*)

Even if Leiser were correct that he had to challenge his reclassification decision, his inmate reclassification report notes that inmates "may request an Administrative Review of the Classification decision pursuant to DOC 302.19 by filing a current DOC-1292 (Rev. 7/2018) form . . . within 10 days of receipt of the final decision." (ECF No. 27-1 at 6.) This suggests that, even if Leiser could not challenge his reclassification through the ICRS, he still had an available administrative remedy to challenge his reclassification and transfer.

Moreover, Leiser did not comply with the rules for requesting review of the classification decision. Leiser was instructed to file an "Administrative Review of Classification Decision form within 10 days of receipt of the final decision." (ECF No. 27-1 at 6.) *See* Wis. Admin. Code § DOC 302.19(3) (requiring that any request for review of a classification decision "shall be submitted on an administrative review form"). Leiser did not submit an administrative review form. He filed a standard

9

inmate complaint (a DOC-400), which is provided under DOC 310, not DOC 302. (ECF No. 24-1 at 6.) By not properly requesting administrative review of the classification decision, he failed to adhere to the prison's specific procedures to contest his transfer. *See King*, 781 F.3d at 893 (noting that prisoners "must comply with the specific procedures and deadlines established by the prison's policy); *Pozo*, 286 F.3d at 1023 (holding that, to exhaust his administrative remedies, a prisoner must "compl[y] with the state's rules for form and timeliness of action"). For that reason alone, he failed to exhaust his administrative remedies to challenge his transfer.

Leiser further asserts that, had he exhausted this administrative remedy, "it would have been denied as you cannot appeal placement decisions by PRC." (ECF No. 31, ¶ 4.) He cites to the reclassification report, which states the administrative review may be only "based on erroneous information, not disagreement with custody and/or placement recommendation." (*Id.*; ECF No. 31-1 at 1.)

The Seventh Circuit has held that "[a]n inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing *Booth*, 532 U.S. at 741 n.6); *see also Perez*, 182 F.3d at 536 ("No one can *know* whether administrative requests will be futile; the only way to find out is to try."). Therefore, Leiser was required to at least attempt the available classification review process before filing his complaint in federal court. His argument may have failed. But this circuit's law requires inmates "to try" to exhaust the administrative process before filing a federal lawsuit. Leiser did not try, and he therefore failed to exhaust his administrative remedies.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice for failure to exhaust administrative remedies. The clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of February, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge